IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **ULTIMATE MOTORCARS, INC., and ADVANCED MOTORCARS, INC.,** | |
| Plaintiffs, | **8:21CV393** |
| vs. | **ORDER** |
| **HOUSTON SPECIALTY INSURANCE COMPANY,** | |
| Defendant. | |
| **MOTORCARS OF LINCOLN, LLC,** | |
| Plaintiff, | **8:21CV395** |
| vs. | **ORDER** |
| **HOUSTON SPECIALTY INSURANCE COMPANY,** | |
| Defendant. | |

This matter is before the Court on the Motion to Quash Subpoena (Filing No. 28 in Case No. 8:21CV393; Filing No. 25 in Case No. 8:21CV395)[1] filed by Defendant, Houston Specialty Insurance Company. Defendant moves to quash the subpoena issued by Plaintiffs and served upon an attorney retained by Defendant in connection with Plaintiffs' claims under an insurance policy issued by Defendant. For the following reasons, the Court will grant the motion.

## BACKGROUND

Plaintiffs, Ultimate Motorcars, Inc., and Motorcars of Lincoln, LLC, are Nebraska corporations operating automobile dealerships in Omaha and Lincoln, Nebraska. Plaintiffs maintained insurance coverage for their dealerships under a policy issued by Defendant for a term commencing May 1, 2019, continuing until May 1, 2020. Plaintiffs allege that on May 28,

---

[1] Unless otherwise indicated, all further citations to CM/ECF will be to the Lead Case, 8:21CV393.

2019, insured vehicles at their Omaha dealership locations were damaged by hail, and on April 12, 2020, insured vehicles at their Lincoln location were damaged by hail. Plaintiffs allege Defendant has paid part of their claims, but not all the costs to repair the vehicles. (Filing No. 1-1 in Case No. 8:21CV393; Filing No. 1-1 in Case No. 8:21cv395). On September 10, 2021, Plaintiffs filed separate actions in state court for breach of contract against Defendant for failure to make required contractual payments for all damages incurred by Plaintiffs from the hail storms. Defendant removed both actions to this court (Filing No. 1 in Case No. 8:21CV393; Filing No. 1 in Case No. 8:21cv395), after which these cases were consolidated for all purposes (Filing No. 18).

The present issue before the Court concerns a deposition subpoena served by Plaintiffs upon Michael Moran, an attorney retained in 2020 by Defendant through its agent and third-party claims administrator, Applied Claims Services, LLC ("Applied"). Mr. Moran was retained to represent Defendant regarding the application of Nebraska law to Plaintiffs' claims under the insurance policy. Mr. Moran was provided information by Applied and Defendant but did not otherwise have firsthand knowledge or investigate Plaintiffs' claims. On April 15 and June 12, 2020, at the direction of Applied, Mr. Moran sent letters to Plaintiffs in response to their claims for coverage under the policy. (Filing No. 30 at pp. 1-2).

In his letter dated April 15, 2020, Mr. Moran outlines Applied's position that, based upon the facts and information as presented to Applied, Plaintiffs' supplemental claims were being partially denied because Plaintiffs did not provide certain information regarding repair invoices and payments requested by Applied as a condition precedent to coverage under the policy and Nebraska law. The letter provides that Applied was "unable to make an informed decision on estimates submitted as part of the supplemental claim" for several vehicles because the line items on the estimates were vague and unclear as to what work was performed and by whom. The letter states that Applied contacted Plaintiffs' chosen repair vendor, Dent Impressions, Inc., to obtain the requested "missing information," but Dent Impressions refused to provide it. As a result, Applied's position in the April letter was that Plaintiffs had not satisfied their duties under the insurance policy for failing to supply the "missing information" as requested. The letter states Applied was willing to "make an accommodation as to the majority of the supplement claim" and would agree to pay $670,394.09 to resolve the claim. (Filing No. 30 at pp. 7-10).

On April 24, 2020, Mr. Moran participated in a conference call with Brian Chenvert of Dent Impressions, Inc., Plaintiffs' chosen repair vendor; Steve Barnes, Plaintiffs' insurance agent; Tresa Loose, Applied's Vice President; Stuart McCullum and Paula Mashburn, forensic accountants retained by Applied on behalf of Defendant; and Nancy Valdez, Applied's Sr. Vice President. The purpose of the call was to discuss Defendant's partial denial of Plaintiffs' claims.

In his letter dated June 12, 2020, Mr. Moran outlines information from the April 24 conference call confirming Applied's earlier position regarding Plaintiffs' claims. Specifically, Mr. Moran sets forth information provided by Mr. Chenvert supporting Applied's position that it was unable to reinspect certain vehicles to fairly determine whether additional repairs were required, depriving Applied of a fair opportunity to make an informed decision on the additional repairs and expenses associated with the same. Mr. Moran also references a discussion during the April call concerning estimates completed by Intellus Automotive Systems, which required revision in mid-June 2019. Finally, Mr. Moran references Mr. Chenvert's confirmation during the April call that Dent Impressions would not provide documentation regarding Applied's request for "missing information." Applied again confirmed its earlier position that it would offer $670,394.09 to resolve the claim. (Filing No. 30 at pp. 11-14). Mr. Moran had no further involvement with Plaintiffs' claims after he sent this June 12, 2020, letter.

On September 16, 2022, Plaintiffs served a deposition subpoena upon Mr. Moran commanding him to appear for a deposition on October 25, 2022. The subpoena sets forth the topics to be testified to by Mr. Moran:

> (1) The substance of letters sent by Michael Moran to Plaintiffs regarding Defendant's partial denial of Plaintiff's insurance claims under the policy.
>
> (2) The reasons why Plaintiff's claim was denied in whole or in part, specifically regarding the information that Defendant considered necessary to process the Claim but that was allegedly not provided by Plaintiff, and the reasoning underpinning Defendant's contention that Plaintiff selling parts to a third-party repair vendor at arms length was considered equivalent to Plaintiff performing the repairs itself, purportedly necessitating the application of a 25% discount of parts.

(Filing No. 28-1). Defendant now moves to quash the subpoena directed to Mr. Moran due to Plaintiffs' failure to satisfy the requirements for taking the deposition of opposing counsel pursuant to *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). By agreement of the parties, Mr. Moran's deposition was postponed until after the Court resolves the motion.

3

## ANALYSIS

The federal rules do not forbid deposing the counsel of an opposing party, *Desert Orchid Partners, LLC v. Transaction System Architects, Inc.*, 237 F.R.D. 215, 218 (D. Neb. 2006), and "[a] motion seeking to prevent the taking of a deposition is regarded unfavorably by the courts[.]" *Raml v. Creighton University*, No. 8:08CV419, 2009 WL 3335929, *2 (D. Neb. Oct. 15, 2009). Nevertheless, "federal courts have disfavored the practice of taking the deposition of a party's attorney" and have made clear that "the practice should be employed only in limited circumstances." *Desert Orchid*, 237 F.R.D. at 218. (quotation omitted). In *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), the Eighth Circuit Court of Appeals expressed general disapproval of the practice of taking opposing counsel's deposition, a tactic "that should be employed only in limited circumstances," rejecting the notion that a party could "simply depose opposing counsel in an attempt to identify the information that opposing counsel has decided is relevant and important to his legal theories and strategy." *Shelton*, 805 F.2d at 1327. Consequently, the Eighth Circuit established a three-prong test for when a party may depose opposing counsel: "(1) no other means exist to obtain the information than to depose opposing counsel . . .; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton*, 805 F.2d at 1327. Except where these requirements are satisfied, the Eighth Circuit found "[t]he harassing practice of deposing opposing counsel . . . does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process." *Id.* at 1330.

Plaintiffs first argue Mr. Moran does not qualify as "opposing trial counsel" and thus argues the *Shelton* three-prong test is inapplicable. Plaintiffs rely on *Oehmke v. Medtronic, Inc.*, No. CIV. 13-2415 MJD/JSM, 2015 WL 2242041 (D. Minn. Mar. 26, 2015), *aff'd*, No. CIV. 13-2415 MJD/JSM, 2015 WL 2242064 (D. Minn. May 12, 2015) for the proposition that the *Shelton* test is limited to situations where "(1) the deposition is either trial/litigation counsel in the instant case; and (2) the information sought would expose litigation strategy in the pending case." 2015 WL 2242041, at *6 (citation omitted). Plaintiffs assert Mr. Moran is not trial/litigation counsel with information that could potentially expose Defendant's litigation strategy because this case commenced over a year after Mr. Moran's involvement, Mr. Moran has not participated in defense strategy or collection of litigation documents, there are no other lawsuits related to this

4

consolidated action, and the scope of Mr. Moran's participation is not in dispute. (Filing No. 32 at pp. 4-7). Plaintiffs suggest the circumstances in this case are more closely aligned with *Pamida, Inc. v. E.S. Originals*, 281 F.3d 726 (8th Cir. 2002), wherein the Eighth Circuit found a party may depose opposing counsel if the party "seeks relevant information uniquely known by [the] attorneys about prior terminated litigation, the substance of which is central to the pending case." *Id.* at 731. *Pamida* does not apply unless the information sought from counsel is "peculiarly within counsel's knowledge," and counsel has waived privilege. *Smith-Bunge v. Wisconsin Central, Ltd.*, 946 F.3d 420, 423 (8th Cir. 2019) (citing *Pamida* 281 F.3d at 731).

The Court finds *Shelton*, rather than *Pamida*, applies to the instant circumstances. Plaintiffs seek to depose Mr. Moran regarding the substance of the two letters he sent to Plaintiffs containing Applied's position on Plaintiffs' claims under the insurance policy, as well Mr. Moran's recollection of discussions held during the April 25, 2020, telephone conference with Plaintiffs' representatives and agents. *Pamida* is inapplicable because neither of those topics are "peculiarly" or "uniquely" within Mr. Moran's knowledge, nor has Defendant done anything to waive privilege. Moreover, *Pamida* applies when a party seeks such information about "prior terminated litigation," which is not the case here.

Instead, the record reflects Mr. Moran is an attorney that was retained by Defendant's third-party claims administrator for the specific and limited purpose of providing Defendant with advice concerning Nebraska law in connection Plaintiffs' claims for coverage under the insurance policy. The instant lawsuit was filed by Plaintiffs because they contend Defendant breached that insurance policy in the way Defendant handled Plaintiffs' claims. Mr. Moran did not investigate Plaintiffs' claims himself and relied upon the factual information provided to him by his clients, Applied and Defendant. Mr. Moran authored two letters on behalf of Applied to Plaintiffs, in which he sets forth Applied's position regarding Plaintiffs' claims for coverage under the insurance policy. As such, Mr. Moran's only involvement in this action is in his capacity as a lawyer and legal advisor regarding matters at issue in the ongoing litigation. Where opposing in-house counsel has served as legal counsel regarding matters at issue in the pending litigation, *Shelton* properly applies. See *Smith-Bunge v. Wisconsin Cent., Ltd.*, 946 F.3d 420, 422-23 (8th Cir. 2019) (finding *Shelton* applied to the plaintiff's request to depose in-house defense counsel about her conversations with other employees and whether the plaintiff's employment record caused his termination); *Desert Orchid Partners*, 237 F.R.D. at 220

(concluding *Shelton* applied to plaintiff's request to depose former chief in-house counsel for the defendant); see also *Newkirk v. ConAgra Foods, Inc.*, No. 8:10CV22LSCFG3, 2010 WL 2135263, at *5 (D. Neb. May 27, 2010) (rejecting the plaintiffs' argument that *Shelton* did not apply because the attorney sought to be deposed were not the defendant's "trial" attorneys; "The principles announced in *Shelton* were not limited to 'trial' attorneys[.]").

Plaintiffs further argue that, even if *Shelton* applies, the three factors are met in this case. See *Shelton*, 805 F.2d at 1327 (party seeking to depose opposing counsel must show no other means exist to obtain the information than to depose opposing counsel; the information sought is relevant and nonprivileged; and the information is crucial to the preparation of the case). Plaintiffs assert there are no other means to obtain Mr. Moran's recollections of the April 25, 2020, telephone conference and Mr. Moran is the "best source to confirm and explore the facts asserted in the two letters that Mr. Moran authored." Finally, Plaintiffs maintain this information is crucial because "nothing is more crucial to Plaintiffs' case than what the underlying factual basis was for denying one of the two insurance claims involved in this litigation." (Filing No. 32 at p. 8).

The Court finds Plaintiffs have not satisfied the elements of *Shelton* showing Mr. Moran is properly subject to deposition. As discussed above, Mr. Moran's only role in was to provide Defendant with legal advice and opinions regarding Nebraska law and Plaintiffs' claims under the insurance policy based upon the information provided to him by Applied and Defendant. Plaintiffs maintain they only seek factual testimony regarding Mr. Moran's recollections of conversations he had with Plaintiffs' representatives and agents during the April 2020 telephone conference. But, Mr. Moran is not the only source of that information, and indeed Plaintiffs themselves had representatives on the conference call and have deposed other individuals on the conference call. (Filing No. 31 at p. 2); see *Smith-Bunge*, 946 F.3d at 423 ("A] party cannot depose opposing counsel to explore suspicions about opposing witnesses.").

Nor have Plaintiffs' shown Mr. Moran's limited knowledge is relevant, non-privileged, and "crucial" to the preparation of Plaintiffs' case. Plaintiffs' sole claim in this case is for breach of contract for Defendant's alleged failure to make contractually required payments under the insurance policy for all damages incurred by Plaintiffs from the hail storms. An insurance policy is a contract and its terms provide the scope of the policy's coverage. See *Peterson v. Homesite Indem. Co.*, 840 N.W.2d 885, 891 (Neb. 2013). To recover for a breach of contract, the plaintiff

must prove a promise, the breach of that promise, and damages resulting from that breach. *K.M.H. v. Lutheran General Hosp.*, 431 N.W.2d 606, 608 (Neb. 1988). Plaintiffs want to depose Mr. Moran about "the reasons why Plaintiff's claim was denied in whole or in part" and "the reasoning underpinning Defendant's contention that Plaintiff selling parts to a third-party repair vendor at arms length was considered equivalent to Plaintiff performing the repairs itself[.]" Mr. Moran's letters containing Applied's position regarding its partial denial of Plaintiffs' claims speak for themselves; however, the reasoning underpinning Defendant's position is irrelevant and privileged. Because Plaintiffs have not shown the information sought from Mr. Moran is relevant, nonprivileged, crucial to the preparation of their case, and not available from another source, the Court finds the subpoena commanding his appearance for a deposition is properly quashed. Accordingly,

**IT IS ORDERED** that Defendant's Motion to Quash Subpoena (Filing No. 28 in Case No. 8:21CV393; Filing No. 25 in Case No. 8:21cv395) is granted.

Dated this 14th day of November, 2022.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge