IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ULTIMATE MOTORCARS, INC., and ADVANCED MOTORCARS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HOUSTON SPECIALTY INSURANCE COMPANY, <br><br> Defendant. | 8:21CV393 <br><br> **MEMORANDUM AND ORDER** |
| MOTORCARS OF LINCOLN, LLC, <br><br> Plaintiff, <br><br> v. <br><br> HOUSTON SPECIALTY INSURANCE COMPANY, <br><br> Defendant. | 8:21CV395 <br><br> **MEMORANDUM AND ORDER** |

These consolidated matters are before the Court on defendant Houston Specialty Insurance Company's ("Houston Specialty") Motion for Summary Judgment (Filing No. 46 in Case No. 8:21CV393)[1] pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, Houston Specialty's motion is denied.

---

[1] Houston Specialty's Motion for Summary Judgment does not appear on the docket of Case No. 8:21CV395 as it was not properly "spread" to both cases' dockets when electronically filed. This Memorandum and Order denies its motion as to Case No. 8:21CV395 regardless of this filing error because the cases are consolidated for all purposes and Houston Specialty moves for summary judgment in both matters.

I. BACKGROUND

This case concerns Houston Specialty's contractual obligation to pay for hail damage to vehicles at dealerships owned by Ultimate Motorcars, Inc. ("Ultimate Motorcars"), Advanced Motorcars, Inc. ("Advanced Motorcars"), and Motorcars of Lincoln, LLC ("Motorcars of Lincoln"). Ultimate Motorcars operates Superior Honda of Omaha in Omaha, Nebraska, Advanced Motorcars operates Acura of Omaha in Omaha, Nebraska, and Motorcars of Lincoln operates Honda of Lincoln in Lincoln, Nebraska. All three dealerships are under common ownership and jointly known as the Rhoden Motor Companies ("Rhoden").

The insurance claims at issue arose from two hailstorms. The first storm took place on May 28, 2019, causing damage to vehicles at Rhoden's Omaha dealerships. Vehicles at the Lincoln dealership were subsequently hit by hail on April 12, 2020. Throughout this time, all three dealerships were insured for hail damage under an Automobile Physical Damage Policy ("the policy") issued to Rhoden[2] through Houston Specialty's Vehicle Inventory Program.

After each storm, Rhoden promptly notified Houston Specialty of the damage, provided the requested vehicle inventories, and hired Dent Impressions Inc. ("Dent Impressions") to perform the repair work. For its part, Houston Specialty hired Intellus Automotive Systems ("Intellus") and Applied Claims Group ("Applied") to inspect the dealerships' inventories in the days after the storm. Intellus inspected vehicles at the Omaha dealership to provide estimates of damages for the Omaha claim in June 2019, and Applied similarly inspected and estimated the damages to vehicles for the Lincoln claim in the Spring of 2020.

---

[2]The policy lists Rhoden as the insured and designates Ultimate Motorcars, Advanced Motorcars, and Motorcars of Lincoln as "Quoted Dealer Locations." Though the dealerships are the named plaintiffs in this matter, the parties refer to them collectively as "Rhoden" throughout their briefing. The Court follows that practice here.

The damaged vehicles were repaired, and Rhoden submitted invoices of the repair costs to Houston Specialty in relation to both the Omaha and Lincoln claims. Houston Specialty paid the majority of Rhoden's reported repair costs but discounted them for two reasons: (1) its application of the policy's 25% discount for repairs performed by the insured, and (2) its refusal to pay for repairs it deemed "unapproved supplements."

At the center of the dispute before the Court is Houston Specialty's alleged underpayment of Rhoden's covered repair costs under both claims. On the Omaha claim, Houston Specialty paid Rhoden $5,752,500.62 for 573 vehicles damaged at its dealerships. Rhoden, disagreeing with the reasons Houston Specialty gave for denying some of the repair costs, asserts it is entitled to an additional $543,187.20 on this claim.[3]

While there is no "dispute as to the numbers" on the amounts paid and allegedly owed as to the Omaha claim, the parties dispute "the amounts of Rhoden's claim for its Lincoln dealership." On the Lincoln claim, Houston Specialty states Rhoden was paid $6,232,329.21 despite Rhoden's purported assertion that it was entitled to $7,211,253.13. Rhoden, on the other hand, claims it was paid $8,123,590.76 on the Lincoln claim but that Houston Specialty was actually obligated to cover $8,876,892.27 in costs.[4]

Believing they were out hundreds of thousands of dollars from repair costs that should have been covered under Rhoden's policy with Houston Specialty, the dealerships sued. On September 10, 2021, Ultimate Motorcars and Advanced Motorcars filed a lawsuit against Houston Specialty in the District Court for Douglas County, Nebraska,

---

[3]Of that amount, the unpaid costs attributable to the disputed application of the repairs discount is $478,292.56, while costs associated with "unapproved supplements" account for $64,894.64 of Rhoden's alleged loss.

[4]The parties also dispute the breakdown of the purported underpayment of Rhoden's Lincoln claim. Houston Specialty claims the amount withheld on that claim pursuant to the discount was $311,105.39, while Rhoden states the improper application of the discount shorted it $680,460.76. As to the "unapproved supplements," Houston Specialty contends it denied $442,205.12 of such costs, while Rhoden claims those repairs only account for $72,840.75 of its claimed loss.

3

alleging they are owed at least $543,187.20 due to Houston Specialty's breach of contract for unpaid but covered repairs under their Omaha claim. That same day, Motorcars of Lincoln sued Houston Specialty in the District Court for Lancaster County, Nebraska, stating Houston Specialty's alleged breach of contract in relation to the Lincoln claim has cost it at least $753,301.51.

Houston Specialty removed both actions to this Court on the basis of the diversity of citizenship between the parties, *see* 28 U.S.C. §§ 1332, 1441, and 1446, and answered both complaints. The Court has since consolidated the cases for all purposes. *See* Fed. R. Civ. P. 42(a) (allowing the court to consolidate actions where they "involve a common question of law or fact").

Houston Specialty now moves for summary judgment under Rule 56, arguing "there is no issue as to any material fact" and it is "entitled to judgment on all of Plaintiffs' claims as a matter of law." Rhoden opposes summary judgment, and the parties have provided the Court with briefing, statements of material fact, and indices of exhibits for its consideration, all of which have been thoroughly reviewed.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because Rhoden bears the burden of proof on its claims, Houston Specialty may also "discharge its burden by 'pointing out to the district court . . . that there is an absence of evidence to support [Rhoden's] case.'" *Washington v. City of St. Louis*, 84 F.4th 770, 773 (8th Cir. 2023) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The Federal Rules of Civil Procedure "contemplate[] that the court will sometimes deny" a motion for summary judgment "because the facts are genuinely in dispute and other times because the law does not support the movant's position." *Dupree v. Younger*, 598 U.S. 729, 737 (2023).

In analyzing the record on a motion for summary judgment, the Court views the genuinely disputed facts in the light most favorable to the nonmoving party, giving them the benefit of all reasonable inferences. *See Schilf v. Eli Lily & Co.*, 687 F.3d 947, 948 (8th Cir. 2012). The Court neither weighs the evidence nor attempts to "determine the truth of the matter" at this stage, but merely seeks to "determine whether there is a genuine issue for trial." *Id.* at 949. A triable issue "exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *Morrow v. United States*, 47 F.4th 700, 704 (8th Cir. 2022); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (holding only those "facts that might affect the outcome of the suit under the governing" substantive law are "material" for purposes of summary judgment).

Contract claims—including alleged breaches of insurance contracts—are sometimes, but not always, determinable at the summary-judgment stage. *See McCormack v. Citibank, N.A.*, 100 F.3d 532, 538 (8th Cir. 1996). "When the provisions of a contract, together with the facts and circumstances that aid in ascertaining the intent of the parties thereto, are not in dispute, the proper construction of such a contract is a question of law and determinable upon a motion for summary judgment." *Gilbreath v. Ridgeway*, 360 N.W.2d 474, 477 (Neb. 1984); *accord McCormack*, 100 F.3d at 538. When a contract is ambiguous, however, its interpretation "presents an issue of fact" that may prevent the entry of summary judgment. *Brush & Co. v. W. O. Zangger & Son, Inc.*, 991 N.W.2d 294, 522 (Neb. 2023); *accord McCormack*, 100 F.3d at 538. Summary judgment is also inappropriate where the amount of an insured's loss is in dispute and the insurer is not entitled to judgment as a matter of law. *See Rawlings v. Amco Ins. Co.*, 438 N.W.2d 769, 771 (Neb. 1989); *accord* Fed. R. Civ. P. 56(a).

B.   Analysis

Under Nebraska law,[5] a plaintiff asserting a breach of contract claim "must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty." *United States v. Neb. Beef, Ltd.*, 901 F.3d 930, 934 (8th Cir. 2018) (quoting *Henriksen v. Gleason*, 643 N.W.2d 652, 658 (Neb. 2002)). "[A] breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of a contract." *McGill Restoration, Inc. v. Lion Place Condo. Assoc.*, 959 N.W.2d 251, 269 (Neb. 2021). In moving for summary judgment, Houston Specialty asserts—based on its interpretation of the policy's terms—Rhoden cannot prove it breached the contract in failing to pay the total repair costs.

First, Houston Specialty maintains its application of the policy's repairs discount was proper. Rhoden's coverage generally entitles them to the "actual repair cost for subcontracted work," "the actual price paid by [Rhoden] to the repair facility," where a damaged vehicle is not deemed a total loss. Under the policy, the 25% discount only applies to costs incurred by "repairs [Rhoden] performs or repairs performed by a repair facility in which [Rhoden] or any of [its] officers, shareholders or employees have a financial interest."

During both claims, Rhoden sourced and sold vehicle parts to be used in the repairs to Dent Impressions at wholesale price. When Dent Impressions later invoiced Rhoden for its work, it charged Rhoden a marked-up price of those parts—about a 25% increase from the wholesale cost. Houston Specialty contends that "Rhoden performed an integral component of the repair process" in providing these parts at wholesale price to Dent Impressions, thus triggering the discount.

---

[5]In their briefing, the parties appear to agree the present dispute is governed by Nebraska law. *S&H Farm Supply, Inc. v. Bad Boy, Inc.*, 25 F.4th 541, 547 (8th Cir. 2022) (stating Missouri substantive law would apply to a breach-of-contract claim heard by a federal court sitting in diversity, citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)).

Rhoden asserts this application of the discount is irreconcilable with a reasonable interpretation of the policy's terms. According to Rhoden, it "merely sourced the necessary repair parts" Dent Impressions used in its repairs, consistent with common industry practice. Under a plain reading of the policy, Rhoden asserts, the dealerships did not "perform" any repairs. Because Rhoden, instead, subcontracted those repairs to Dent Impressions, Rhoden asserts it was entitled to the "actual price" it paid to Dent Impressions for those repairs.

The second category of repair costs Houston Specialty states were justifiably denied consists of repairs performed by Dent Impressions it deems "unapproved supplements." Such repairs include those "where the estimates were written for conventional repairs and later changed to paintless dent repair," "unnecessary" repairs to vehicles "later determined to be total losses," and other repairs Houston Specialty claims Dent Impressions made when it "felt there were missing parts from the estimates" which it revised without notifying Intellus or Applied. Houston Specialty argues because those additional repairs were completed "without allowing Applied a chance to reinspect" or providing information requested by its agents, Rhoden breached the "Loss Conditions"[6] of the policy and is not entitled to payment for those repairs.

Rhoden maintains all supplemental repairs were made in accordance with the policy's terms, the parties' past course of dealing, and Houston Specialty's requests. Rhoden states that Houston Specialty has not demonstrated it ever requested to reinspect vehicles, and that the policy's language does not reserve a right to do so anyway. Additionally, their past dealings and contemporaneous discussions with Houston Specialty and its agents left them satisfied that any necessary repairs unidentified by incorrect estimates would eventually be covered without reinspection. All in all, Rhoden

---

[6]Among other things, the "Loss Conditions" of the policy requires that Rhoden "cooperate" in "[t]he investigation or settlement of the loss" and allow Houston Specialty to "[i]nspect the property and records proving the loss" as well as "[i]nspect and appraise the covered auto before its repair or disposition."

7

believes it fully cooperated with the investigation and conditions of payment, and any additional repairs performed by Dent Impressions should therefore be paid for under the policy.

Houston Specialty argues these disputes present mere issues of contract interpretation, which "are particularly amenable to summary judgment." *John Deere Ins. Co. v. Shamrock Indus., Inc.*, 929 F.2d 413, 417 (8th Cir. 1991). Though it is true this matter partially concerns the construction of the policy, a variety of factual issues also plague the parties' dispute. Thus, the Court finds that summary judgment is inappropriate pursuant to any of Houston Specialty's arguments because the plain language of the discount provision renders it inapplicable to Rhoden's claims, and complex factual questions regarding the "unapproved supplements" remain.

      **1.**      **The Discounted Repairs**

In addressing an issue of contract interpretation under Nebraska law, the Court must start by determining whether the policy's language is ambiguous. *Laredo Ridge Wind, LLC v. Neb. Pub. Power Dist.*, 11 F.4th 645, 649 (8th Cir. 2021) (Nebraska law). If the policy is written in "clear and unambiguous language [] not subject to interpretation or construction," the Court must bind the parties to the terms of their contract. *Id.* at 650 (quoting *Home Instead, Inc. v. Florance*, 721 F.3d 494, 498 (8th Cir. 2013)). Ambiguity, on the other hand, exists "when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings." *B. Thomas & Co. v. Universal Warranty Corp.*, 3 F.4th 1032, 1036 (8th Cir. 2021) (quoting *Bierman v. Benjamin*, 943 N.W.2d 269, 274 (Neb. 2020)). In those circumstances, an issue of fact exists for trial. *McCormack*, 100 F.3d at 538.

Under the policy, the maximum amount Houston Specialty is on the hook to pay for any single covered vehicle is "the lesser of (a) the Maximum Limit Per Vehicle shown on the Declarations or Evidence of Coverage, or (b) the wholesale value if the

8

covered auto is a total loss, or (c) the actual repair cost if the covered auto is not a total loss." The policy defines "actual repair cost" as follows:

1. For repairs you perform or repairs performed by a repair facility in which you or any of your officers, shareholders, or employees have a financial interest, actual repair cost means the list price of parts less 25%, plus the customary insurance labor rate less 10%, unless another amount is shown in the Declarations.

2. If you subcontract all or part of the repair to a repair facility in which neither you nor any of your officers, shareholders or employees have a financial interest, actual repair cost for the subcontracted work will be the actual price paid by you to the repair facility.

The Court agrees with Rhoden that this language is unambiguous and Houston Specialty's application of the discount is an illogical "attempt to distort" its plain meaning under the present circumstances.

The policy envisions two potential outcomes: one in which Rhoden performs repairs itself (or has a financial interest in a facility which does so for it) and another in which Rhoden hires another to do that work. Houston Specialty does not dispute that Rhoden "subcontracted with Dent Impressions [] to perform all repair work for the hail claims" and did not do that work itself. The mere fact that Rhoden's sale of the parts to Dent Impressions played a role in the repairs does not transform that transaction into an act of "repair." *See Repair*, Black's Law Dictionary (11th ed. 2019) (defining repair as the "process of restoring something that has been subjected to decay, waste, injury, or partial destruction, dilapidation, etc."). *Cf. A&D Tech. Supply Co. v. Neb. Dep't of Revenue*, 607 N.W.2d 857, 867 (Neb. 2000) ("Nebraska law states that to 'repair' means to restore to a sound or good state after decay, injury, dilapidation, or partial destruction."). The plain meaning of the policy, therefore, bound Houston Specialty to the latter, undiscounted definition of "actual repair cost": "the actual price paid by" Rhoden to Dent Impressions for the repairs.

9

Houston Specialty's own arguments put a dent in its case for summary judgment. Despite its claims that the policy's language is clear, Houston Specialty fails to provide any evidence of its plain meaning to support its contention that selling parts to a subcontractor was intended to trigger the discount. Instead, Houston Specialty places emphasis on the "purpose" of the contested provisions—to reflect the accurate cost of repairs—and the "integral component" Rhoden performed in the repair process by providing the parts. But the "accurate cost of repairs" to Rhoden included the retail price, not the discount price, of the parts that Dent Impressions charged. Plus, Houston Specialty's own description of the events repeatedly admits that Dent Impressions was hired to "perform the repair work" and "ma[de] the repairs" itself before invoicing Rhoden for the costs.

All told, Houston Specialty fails to support its contention that Rhoden's supply of parts to Dent Impressions "triggered the parts discount" under a natural interpretation of the policy's unambiguous language. Because Houston Specialty failed to pay the covered "actual repair cost" incurred by Rhoden by misconstruing these provisions, the insurer's claim that Rhoden "cannot meet its burden of proof" on this matter is also unfounded. *See Gage County v. Emps. Mut. Cas. Co.*, 937 N.W.2d 863, 870 (Neb. 2020) ("In a coverage dispute between an insured and the insurer, the burden of proving prima facie coverage under a policy is upon the insured."). Thus, Houston Specialty is not entitled to judgment as a matter of law on this issue.

## 2. The Unapproved Repairs

Houston Specialty also maintains it did not have to pay for some of the costs Rhoden incurred because it categorizes them as "unapproved supplements" for various reasons. Those include costs for repairs that Houston Specialty claims were made in addition to, or in a more costly manner, than the original estimates without offering Houston Specialty and its agents an opportunity for reinspection and approval. The denied costs also relate to repairs performed on vehicles later designated by Houston Specialty as total losses.

Houston Specialty contends these issues also solely concern matters of "contract interpretation" presently discernable as a matter of law. It states the Court must simply ask, "[D]oes Rhoden's repair vendor's repair of vehicles prior to HSIC's inspection and said vendors completion of supplemental repairs without allowing HSIC to reinspect those vehicles violate the policy's conditions?" And "does Rhoden's refusal to provide HSIC with information concerning work that Rhoden's repair vendor sublet to other body shops constitute a violation of Rhoden's duty to cooperate?"

The Court doubts that Houston Specialty has sufficiently carried its burden on summary judgment to allow for a simple conclusion to either of these questions at this time. But even if the Court had clear answers to these interpretive issues, summary judgment would still be inappropriate given the breadth and complexity of fact issues relevant to whether more was owed to Rhoden on each vehicle at issue in these supplemental claims.

To start, Houston Specialty's cooperation-clause defense does not appear to be able to carry the weight Houston Specialty puts on it. Houston Specialty alleges that Rhoden significantly failed to cooperate with the investigation of supplemental claims—and is therefore owed nothing on those claims—because neither Rhoden nor Dent Impressions responded to a letter from Applied requesting information about the body shops involved in the repair work or allowed for reinspection upon supplementing the original estimates.

Under Nebraska law, "an insurer may assert a breach of a cooperation clause as a defense when the insurer was prejudiced by the lack of cooperation." *Wright v. Farmers Mut. of Neb.*, 669 N.W.2d 462, 466 (Neb. 2003). Refusing to provide information material to an insurer's investigation can constitute a breach of a cooperation clause. *Id.* (concluding at the summary-judgment stage the insured's refusal to answer questions asked by the insurer material to their investigation of possible fraudulent activity resulted in a breach).

11

The onus is on Houston Specialty as the movant to "establish, as a matter of law, that" (1) Rhoden breached the policy's "cooperation provision and (2) said breach prejudiced" the insurer. *Mefferd v. Sieler and Co., Inc.*, 676 N.W.2d 22, 26 (Neb. 2004). To demonstrate prejudice, Houston Specialty must establish the alleged breach somehow harmed its ability to "meaningfully protect its interests," *id.* at 28, which requires a showing of more than the "mere passage of time" without a response to the request for information, *Rent-A-Roofer, Inc. v. Farm Bureau Prop. & Cas. Ins. Co.*, 869 N.W.2d 99, 105 (Neb. 2015).

Houston Specialty has not carried its burden to establish a cooperation-clause defense at this stage as multiple fact issues exist as to whether the information Rhoden and Dent Impressions failed to provide was material to the investigation of the supplemental claims, how Houston Specialty was prejudiced by the purported noncooperation, and to what extent any noncooperation justifies its refusal to pay all or part of the supplemental claims.

Houston Specialty has also not established, as a matter of law, that the repair costs incurred on total-loss vehicles categorically lack coverage under the policy. Houston Specialty admits that at least some of those vehicles were only "later deemed total losses," but it is unclear *how* much later that decision came and whether they were originally deemed repairable. Rhoden, for one, asserts it "reasonably relied" on the designation of these vehicles as "repairable" and allowed Dent Impressions to begin its repairs based on that designation. But Houston Specialty retorts "Dent Impressions commenced" at least some repairs *before* its agents issued "preliminary estimates designati[ng] vehicles as either repairable or a total loss."

Altogether, these unresolved issues demonstrate that summary judgment is not proper. Houston Specialty has, overall, simply not presented sufficient briefing and evidence on pertinent issues to demonstrate that it is categorically entitled to judgment as a matter of law and that no "rational trier of fact could find for the nonmoving party."

*Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Because "there is reason to believe that the better course would be to proceed to a full trial" on these complex, fact-specific issues, Houston Specialty's motion for summary judgment must be denied. *Anderson*, 477 U.S. at 255.

Based on the foregoing,

IT IS ORDERED:

1. Houston Specialty Insurance Company's Motion for Summary Judgment (Filing No. 46 in Case No. 8:21CV393) is denied as to both cases in this consolidated matter.
2. The parties shall contact the magistrate judge's chambers within seven days of the entry of this order to schedule a conference call to set new case-progression deadlines.

Dated this 5th day of December 2023.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge

13